**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CATHERINE MILLER,** | : | |
| | : | **Case No. 2:19-cv-500** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **AETNA LIFE INSURANCE COMPANY** | : | **Magistrate Judge Deavers** |
| | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on the parties' cross Motions for Judgment on the Administrative Record. (ECF Nos. 19, 20). For the following reasons, Defendant's Motion (ECF No. 19) is **DENIED** and Plaintiff's Motion (ECF No. 20) is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

Plaintiff Catherine Miller worked as a Lead Software Engineer for Online Computer Library Center, Inc. ("OCLC") for nineteen years until October 1, 2017. She participated in OCLC's long term and short-term disability benefits plan. (ECF No. 1 at 2). Defendant, Aetna Life Insurance Company, serves as the insurer of the long-term disability benefits plan for OCLC employees.

As a Lead Software Engineer, Miller was responsible for, among other responsibilities, "high level analysis and design[ing] software for new and existing systems using industry standard programming techniques to translate requirements and designs into code." (ECF No. 20 at 3-4). Her work required her to design and implement computer applications, supervise and help other

computer programmers, troubleshoot computer software, and "act as a technical software expert in a fast-paced setting." (ECF No. 1 at 2).

Miller alleges that she suffers from several conditions including chronic low back pain, multi-level degenerative disc disease, spinal stenosis, lumbar radiculopathy, fibromyalgia, osteoarthritis, leg pain, and side effects from taking prescribed medications to manage these conditions. (ECF No. 1 at 2). Due to the impact that these conditions had on Ms. Miller's ability to perform her work as a software engineer, OCLC advised Ms. Miller to apply for disability benefits. *Id*. After applying for short-term disability, Aetna denied Ms. Miller those benefits. Ms. Miller appealed the denial of those benefits to OCLC, who served as the plan administrator, and OCLC reversed Aetna's decision, determining that Ms. Miller was disabled according to the terms of the self-funded short-term disability benefits plan. *Id*. at 3.

After Ms. Miller exhausted her short-term disability benefits, she applied for long-term disability benefits with Aetna. On April 9, 2018, Aetna denied Plaintiff's application for benefits on the basis that Ms. Miller had "full time work capacity," relying on surveillance footage of Ms. Miller selling jewelry at a craft fair, letters from two of Millers' treating physicians who agreed with Aetna that she had full time work capacity, and Aetna's observation that "there was no significant change in treatment at the time she stopped working." (ECF No. 19 at 10-11; ECF No. 20 at 8-9).

Ms. Miller appealed Aetna's decision denying her benefits on October 11, 2018. (ECF No. 19 at 11). To evaluate her claim, Aetna requested an independent medical opinion from Dr. Adriana Carrillo, a board-certified physical medicine and rehabilitation doctor, who did not conduct a physical examination but completed an Independent Medical Review, also referred to as a "file review." *Id*. at 12. As part of that review, Dr. Carrillo reviewed Ms. Miller's medical

history and examination notes, Plaintiff's social media records, spoke with Ms. Millers' treating physicians, and reviewed the surveillance footage that Aetna had gathered as part of its initial investigation of Ms. Millers' claim. (ECF No. 19 at 12-13).

After reviewing Plaintiff's file and discussing it with Miller's treating physicians, Dr. Carrillo determined that while Plaintiff felt some pain, she had the ability to work full time, provided she is accommodated and allowed to change positions and not lift over ten pounds. *Id*. at 12. Dr. Carrillo noted that Miller's examinations revealed no abnormalities, that the surveillance footage showed her to be active, and that Miller's claim that her medication made it difficult for her to concentrate was not supported by drug screens which revealed she only took Adderall with no reported issues. *Id*. at 13. Based on Dr. Carrillo's file review and its determination that Plaintiff could work fulltime with accommodation, Aetna affirmed its decision to terminate benefits on January 15, 2019. *Id*. at 13; (AR at 115-118).

In support of her disability claim, Miller submitted her own account of her illnesses, as well as documentation from treating physicians. The relevant portions of the administrative records are as follows:

- Examination notes from Ms. Miller's primary care physician, **Dr. Eric Schroer**, who has treated Plaintiff since 2014. (ECF No. 20 at 4). Dr. Schroer diagnosed Ms. Miller with lumbar radiculopathy, leg edema/venuous insufficiency, morbid obesity, ADHD, and depression on February 1, 2017. (AR 384-86). He also noted several other conditions that Ms. Miller suffered from with onset dates between 2009 and 2016 and listed several medications prescribed to Plaintiff to manage her condition. *Id*. In his notes from an examination conducted on September 18, 2017, Dr. Schroer noted that Ms. Miller was "debilitated" by her fibromyalgia and chronic back pain, and that chronic pain and fatigue

made it difficult for her to focus. He noted that the "additive effects of her several significant medical issues make it very difficult for her to continue in her current position." (AR 354-56). In an office visit on February 22, 2018, Dr. Schroer's notes state that Plaintiff has "significant degenerative disc disease," that "pain radiates to both legs," and that while "[r]ecumbent pain varies, can be improved by changing position." (AR 327). In the assessment/plan section of his treatment notes from the February 2018 visit, Dr. Schroer wrote in regards to Plaintiff's degenerative disc disease, "[t]his appears to be a disabling condition with no good medical solution." *Id.* at 332.

- Examination notes from Ms. Miller's spine/pain management specialist, **Dr. Michael Simek**, who has treated Ms. Miller since 2017 for her chronic back pain. His letter to Dr. Schroer, dated September 13, 2017, discusses his examination of Ms. Miller and diagnoses her with chronic pain due to lumbar radicular symptom, degenerative disc disease, and spondylosis; fibromyalgia; and obesity. (AR 468). Based on this examination, Dr. Simek noted that Ms. Miller "is likely permanently disabled from her employment" due to her experiencing "significant amount[s] of paint" and having difficulty sitting at her computer for prolonged periods of time at her "work as a software engineer." (AR 469). In a second exam on November 13, 2017, Dr. Simek reiterated his chronic back pain diagnosis and indicated in his treatment notes that he "still feel she's likely totally and permanently disabled from her current job as a software engineer due to her lumbar spine condition and comorbidities." (AR 480).

- Examination notes from a consult with **Dr. Milan Herceg**, an orthopedic spine surgeon who examined Ms. Miller on May 8, 2017. Dr. Herceg's examination notes indicated that while he did not believe there was any compressive pathology, he did see "mild disc

4

desiccation." (AR 594). He noted that surgical intervention would "really make this issue worse" and recommended intermittent treatment and pain management. *Id.*

- A January 10, 2017 MRI confirming "multilevel disc disease" and noting that there were no "compression deformities. No spondylolysis or spondylolisthesis." (AR 634).

- Treatment notes from a visit with **Dr. Aanupama Chauhan**, a rheumatologist, who on June 15, 2017, diagnosed Ms. Miller with fibromyalgia, prescribed a muscle relaxant, and adjusted Ms. Miller's pain medication. (AR 786).

- Treatment notes from **Dr. William Barker**, and orthopedic surgeon who provided Ms. Miller with injections in July 2016 to treat her worsening left knee pain. (AR 303).

- Surveillance reports and footage from December 16-17, 2017. The report indicated that on December 16, Ms. Miller attended a craft fair in Franklin County for over six hours. (AR 649). The report indicated that Ms. Miller did not use her own vehicle to get to the craft fair. *Id.* According to the report, Ms. Miller sat in a folding chair or stood to interact with customers near her table. *Id.* She was "observed placing one or both hands on her hips and lower back area." The report indicates that at the end of the fair, "a few other individuals dismantled the claimant's table and the claimant traveled back to her residence" as a passenger in a vehicle. *Id.* The following day, the surveillance reports that Ms. Miller did not leave the house and her car remained parked in front of the house.

- A clinical file review conducted by **Dr. Adriana Carrillo,** a physical medicine and rehabilitation physician, **at Aetna's request,** on December 18, 2018. (AR 93-114). Dr. Carrillo reviewed Ms. Miller's medical records and physical examination notes, the surveillance report, a letter from Plaintiff's attorney describing her occupational requirements, and spoke with two of Ms. Millers' treating physicians—Dr. Simek and Dr.

5

Chauhan. *Id*. Dr. Carrillo's report stated that Ms. Miller's reports of pain were not credible and consistent due to a discrepancy between her complaints of pain and objective findings on physical examinations. Dr. Carrillo stated that Plaintiff was only taking Adderall based on a drug screen and that is inconsistent with Plaintiff's claim she had trouble concentrating because of medication she was taking. *Id*. Nonetheless, Dr. Carrillo stated that there is evidence supporting limitations placed on Plaintiff's work due to her "consistent complaints of pain." (AR 113).

OCLC's long term disability policy's definition of disability is when a claimant "cannot perform the material duties of [her] own occupation solely because of an illness, injury or disabling pregnancy related condition." (AR 117). The long-term disability benefit eligibility requirements provide that a claimant will be considered "disabled while covered under this Long Term Disability (LTD) Plan on the first day that [claimant is] disabled as a direct result of a significant change in [her] physical or mental conditions." (ECF No. 17-8 at 187).

### B.  Procedural Background

On February 2, 2019, Catherine Miller filed her Complaint bringing suit pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), claiming Aetna's refusal to approve her long-term disability claim was arbitrary and capricious because Aetna did not conduct a full review of her claim by refusing to arrange for an in-person medical exam, disregarding the opinions of her treating physicians, and failing to consider other evidence in the record including the nature of her occupation in making its decision. (ECF No. 1 ¶ 26). Defendant Aetna filed an Answer on November 26, 2018, in which it admitted and denied various allegations in the Complaint and submitted several affirmative defenses. (ECF No. 8). On

September 3, 2019 Plaintiff and Defendant filed cross Motions for Judgment on the Administrative Record, and each timely filed Responses in Opposition on September 30, 2019.

## II.    STANDARD OF REVIEW

This Court reviews an ERISA plan administrator's termination of benefits de novo "unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits." *Cox. v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). If the benefit plan gives the administrator discretionary authority to determine eligibility for benefits, the Court reviews the administrator's decision under the highly deferential "arbitrary and capricious" standard of review. *Id.*

Plaintiff does not dispute that Aetna is entitled to the more deferential "arbitrary and capricious" standard, but argues that this Court's review of Aetna's decision should be "tempered" by the fact that Aetna is "operating under a dual-role conflict" since Aetna pays the disability claims and decides who is entitled to receive payment. (ECF No. 22 at 2). The inherent conflict of interest of a dual-role insurer like Aetna is considered as a factor in this analysis, but it does not alter or displace the "arbitrary and capricious" standard of review altogether. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–16 (2008); *see also Cox*, 585 F.3d at 299 ("In close cases, courts must consider that conflict as one factor among several in determining whether the plan administrator abused its discretion in denying benefits.").

Under this deferential standard of review, when a plan administrator offers a "reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Evans v. Unum Provident Corp.,* 434 F.3d 866, 876 (6th Cir.2006) (quoting *Perry v. United Food & Workers Dist. Unions 445 & 442,* 64 F.3d 238, 241 (6th Cir.1995)). Put differently, the Court should consider whether Aetna's decision to deny Plaintiff's benefits was "the result of

a deliberate, principled reasoning process ... supported by substantial evidence." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir.2006). Although the Court's review is deferential, "it is not a rubber stamp for the administrator's determination." *Id.* ("[D]eferential review is not *no* review."). Further, the Court is confined to examination of the administrative record. *Farhner v. United Transp. Union Discipline Income Prot. Prog.*, 645 F.3d 338, 343 (6th Cir.2011).

### III.    LAW & ANALYSIS

Plaintiff argues that Aetna's denial of long term disability benefits on the basis that she could perform the material duties of her occupation was arbitrary and capricious for several reasons including: (1) Aetna improperly relied on a file review by a physician who mischaracterized the evidence and made a credibility determination without a medical examination; (2) Aetna failed to credit objective medical evidence supporting Ms. Miller's claim; (3) Aetna relied on a surveillance video which supports Ms. Miller's claim of disability and which did not portray Ms. Miller engaged in activities relating to the "material duties" of her occupation; and (4) Aetna failed to consider that the totality of Ms. Miller's symptoms made her disabled, determining that she was not disabled because she did not suffer from a single disabling condition. (ECF No. 22). Defendant argues that substantial evidence supports its decision that Plaintiff was not disabled from her own occupation, including objective medical examination results and surveillance footage showing Plaintiff active in attending craft fairs. (ECF No. 19 at 14-15). This court will consider each of Plaintiff's arguments, but the "ultimate issue ... is not whether discrete acts by the plan administrator are arbitrary or capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir.2006) (internal citations omitted).

### A.  Reliance on Dr. Carrillo's File Review

Plaintiff first argues that Aetna improperly relied on a file review by a physician who mischaracterized the medical evidence in the file review report and made a credibility determination without ever having examined Ms. Miller. (ECF No. 22 at 4). Defendant argues that it was permitted to rely on the file review conducted by Dr. Carrillo and had no obligation to conduct an independent medical examination where plaintiff's medical examinations were normal and "no treating physician … ever consistently provided an opinion that Plaintiff could not work." (ECF No. 21 at 8-9).

While there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination," the Sixth Circuit has noted that it is a "factor to be considered in reviewing the propriety of an administrator's decision regarding benefits." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (citing *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005)). A file review has repeatedly been found to be an inappropriate method of assessing the credibility of a claimant's complaints of pain, particularly where nothing in the claimant's medical file suggests she is malingering. *See Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees*, 741 F.3d 686, 702 (6th Cir. 2014) (noting "reliance on a file review is inappropriate where a claims administrator disputes the credibility of a claimant's complaints"); *Bennett v. Kemper Nat. Servs., Inc.*, 514 F.3d 547, 555 (6th Cir. 2008) (noting "we will not credit a file review to the extent that it relies on adverse credibility findings when the files do not state that there is reason to doubt the applicant's credibility.").

A review of the administrative record and Dr. Carrillo's report leads this Court to the conclusion that Aetna was wrong to rely on Dr. Carrillo's file review to deny Ms. Miller benefits

because the file reviewer made credibility determinations without conducting an in-person exam and the file reviewer failed to assess how Plaintiff's diagnosed conditions affected her ability to conduct her own occupation.

First, Dr. Carrillo determined that Ms. Miller's reports of pain from her low back and fibromyalgia were not credible or consistent with the objective medical evidence.[1] (AR 112). But Dr. Carrillo did not conduct an in person medical examination and her written opinion relied on notes from physical examinations done by Miller's treating providers diagnosing her with morbid obesity, swelling of lower extremities, and tenderness to palpation over the lumbar spine. (AR 112). Ms. Miller's treating physicians indicated those conditions are the source of her pain. (AR 440; AR 332). By dismissing Ms. Miller's reports of debilitating pain and her treating physicians' determinations that those reports are consistent with her diagnosed conditions, Dr. Carrillo improperly made a credibility determination without examining Ms. Miller.

This is improper. The Sixth Circuit considers the failure to conduct an in person medical examination, particularly where the right to do so is specially reserved in the plan, an important factor in determining whether a disability insurance provider's decision to deny a claimant benefits was arbitrary and capricious. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877-78 (6th Cir. 2006) (noting that reliance on file review is inadequate where "the conclusions from that review include critical credibility determinations regarding a claimant's medical history and symptomology"); *see also Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 672 (S.D. Ohio 2015)

---

[1] This Court and others within the Sixth Circuit have repeatedly observed that fibromyalgia is not readily diagnosed with "objective evidence" and "commonly turns on subjective reports of pain" since tests conducted to assess the source of the "unremitting pain … will usually yield normal results." *Holler v. Hartford Life & Acc. Ins. Co.*, 737 F. Supp. 2d 883, 891 (S.D. Ohio 2010) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817–819 (6th Cir.1988)); *see also Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 672 (S.D. Ohio 2015).

(determining that reliance on file reviewer who discounted claimant's reports of pain without conducting in person medical examination was arbitrary and capricious and it was "inappropriate for an administrator to dismiss a claimant's self-reports and other subjective evidence of disability, particularly where the administrator has no basis for believing the evidence is unreliable") (quoting *James v. Liberty Life Assur. Co. of Bos.*, 582 F. App'x 581, 589 (6th Cir. 2014)) (internal quotation marks omitted).

Here, none of the treatment notes from Ms. Miller's treating physicians indicate that she was malingering or that there is reason to doubt her claims of pain. In fact, when Dr. Carrillo discussed Ms. Miller's conditions with treating physician Dr. Simek, Dr. Simek explained his opinion that Ms. Miller was disabled as a result of all her conditions and suggested that Dr. Carrillo conduct an in-person examination to make the determination for herself. (AR 111). As a result, Aetna's decision to credit Dr. Carrillo's report and the included credibility findings without ordering an in-person examination is baffling, particularly since Aetna specifically reserves the right to order an in-person examination in its policy. (ECF No. 17-8 at 89); *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006) (noting that a plan's decision to conduct a file-only review, particularly, where the right to conduct a physical examination is expressly reserved, raises "questions about the thoroughness and accuracy of the benefits determination."). Accordingly, Aetna's decision to rely on Dr. Carrillo's report, including its credibility determinations, in denying benefits was arbitrary and capricious.

Second, despite receiving information about Ms. Miller's occupation and the intellectual demands of workings as a lead software engineer, Dr. Carrillo did not take into account the material aspects of that role in determining that Ms. Miller was not disabled. Dr. Carrillo's report recommended accomodations which focused exclusively on Ms. Miller's physical capabilities

without discussing how her reported chronic pain could impact her ability to function intellectually in her position. (AR 113). Dr. Carrillo's report appeared to concede that Ms. Miller's complaints of pain should be accommodated—despite determining that they were not credible and consistent— by including physical restrictions on lifting and seated work, without addressing how the pain might affect Ms. Miller's ability to focus and produce intellectually rigorous work.

Aetna's long-term disability benefits policy notes that a claimant is disabled if she "cannot perform the material duties of [her] own occupation solely because of an illness, injury or disabling pregnancy related condition." (AR 117). This requires Aetna to evaluate a claimant's medical evidence and history in light of the claimant's own occupation to determine whether a claimant is disabled. The Sixth Circuit has previously determined in similar situations, that the intellectual and technical aspects of a position are just as relevant as the physical considerations for determining whether a claimant is disabled from her own occupation. *See Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees*, 741 F.3d 686 (6th Cir. 2014); *Kramer v. Paul Revere Life Ins. Co.*, 571 F.3d 499, 507 (6th Cir. 2009).

In *Javery*, the Sixth Circuit determined that the insurance provider's decision to deny disability benefits to a software engineer was arbitrary and capricious where the provider relied on file reviews by psychiatrists who had never examined the claimant, discounted the effect of claimant's pain on his ability to work by suggesting that there is "no anatomic or physiologic basis for the chronic pain syndrome that is present," and by failing to properly account for the intellectual aspects of the claimant's occupation. 741 F.3d at 702. The Court noted that the parties agreed that claimant's job as a "software engineer was technically and intellectually demanding and required sitting for prolonged periods of time" and the panel was troubled by a physician whose file review indicated he "ignored the intellectual aspects of Plaintiff's job as a software engineer." *Id*.

12

Similarly, in *Kramer*, the Sixth Circuit determined it was arbitrary and capricious for an insurer to terminate an OB/GYN's disability benefits on the basis that there was a lack of objective evidence to support that the plaintiff could not work. 571 F.3d at 507. In *Kramer*, Dr. Kramer's employers had stated she was "unable to perform the functions of her own occupation" and her "treating physicians had "individually and collectively documented the plaintiff's condition" resulting in a record showing that "she was experiencing both substantial physical limitations and pain." *Id*.

Here, just as in *Javery*, Ms. Miller works as a software engineer. Yet, neither Aetna's decision nor Dr. Carrillo's report discuss the material duties of a software engineer in the national economy. (AR 94-117). Furthermore, just as in *Kramer*, Miller's own employers determined that she was disabled from her occupation when they reversed Aetna's decision denying short term disability benefits on appeal. (ECF No. 1 at 2-3). While Aetna's decision to classify Ms. Miller's work as sedentary was not improper, its failure to discuss the material duties of a software engineer and how evidence relating to Ms. Miller's chronic pain would impact her ability to conduct intellectually demanding work denied Ms. Miller of a full and fair review.

### B. Failure to Consider and Credit Objective Medical Evidence in the Record

Plaintiff also argues that Aetna failed to credit objective medical evidence and instead selected only those parts of the record emphasizing "normal" findings to make the assessment that Ms. Miller was not disabled from her occupation. (ECF No. 22 at 9-10). Defendant argues that there is sufficient medical evidence justifying its conclusion that Ms. Miller is not disabled and that it was entitled to credit Dr. Carrillo's testimony above Dr. Simek's contrary opinions because Dr. Simek's opinion that Plaintiff was disabled was not consistent. (ECF No. 19 at 11-12).

Plan administrators "are not obliged to accord *special deference* to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (emphasis added). A plan administrator, however, may not summarily reject the opinions of a beneficiary's treating provider, and must instead give reasons for adopting an alternative opinion. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006). But giving greater weight to a non-treating physician's opinion for no apparent reason lends force to the conclusion that a plan administrator's decision is arbitrary and capricious. *Elliott*, 473 F.3d at 620; *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir.2005) (noting that whether "a doctor has physically examined the claimant is indeed one factor that [courts] may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician.").

First, the objective medical record shows an overwhelming amount of evidence that Ms. Miller was diagnosed with an array of conditions that her treating physicians believed resulted in disabling pain and that she was prescribed medication to manage that pain that had the effect of interfering with her ability to focus. The objective evidence in the record includes the following:

- A diagnosis of obstructive sleep apnea on August 7, 2017 (AR 643);

- An MRI showing Ms. Miller to have multi-level disc displacement (AR 637);

- Multiple office visits with multiple providers diagnosing her with lower back pain and treating her with steroid injections and pain medication for this condition (AR 282-289);

- Notes from an office visit with certified physician's assistant Shannon Ghizzoni in October 2017 noting tenderness of the lumbar spine and that pain medication, Lyrica, was prescribed to treat the pain (AR 779);

- A letter from Dr. Simek to Dr. Schroer explaining that a number of treatments and medications have been conducted to treat Ms. Miller's back pain but that she reports the pain persists—the letter noted "[p]ain and tenderness to palpation over the thoracic and lumbar Para spinals" (AR 468-69);

- an office visit with Dr. Chauhan prescribing Lyrica and noting that Dr. Chauhan discussed the "risks and benefits of lyrica at length … including the risk of sleepiness" (AR 485); and

- a May 2018 drug screen showing both amphetamines and narcotic medication in Ms. Miller's system

(AR 108, AR 324). These are only some of many documents supporting Ms. Miller's claim of total disability and inability to focus due to pain from her diagnosed conditions and the medication prescribed to help her manage associated pain. Most importantly, both Dr. Carrillo and Aetna discredited Ms. Miller's claim that she was suffering from loss of "high cognitive function" due to prescription medication and pain, by claiming that drug screens revealed she was not taking any medication other than Adderall which she had taken without incident since 2012. (AR 112). Dr. Carrillo's own summary of Ms. Miller's medical record reveals, however, that not only was she prescribed medication that had the potential to impact her cognitive functions, a drug screen from May 2018 showed that she had taken narcotics. (AR 108, 485).

Second, Aetna was not required to credit Ms. Millers' treating physicians' opinions, but it was required to give a reason for adopting an alternative opinion, particularly where, as here, the overwhelming majority of the medical evidence suggests that Ms. Miller's claims of disability due to pain were not only objectively verifiable, but had been treated through prescription medication and injections. In both Dr. Carrillo's report and Aetna's decision to deny benefits on appeal, neither

addressed nor provided any reason why Dr. Simek's opinion that Ms. Miller was totally disabled was not credited. (AR 94-117).

Aetna now states that it was permitted to credit Dr. Carrillo's testimony over Dr. Simek's "ever-changing opinion as to Plaintiff's functionality" since Dr. Simek at one point signed a form indicating his agreement with Aetna's position that Ms. Miller had full-time work capacity. (ECF No. 21 at 10). Neither Dr. Carrillo nor Aetna, however, stated this rational in the report or decision denying benefits, indicating this is an impermissible post-hoc rationale.[2] Nonetheless, the letter sent to Dr. Simek and Dr. Schroer was deceptive and misrepresented the contents of the surveillance report and footage, indicating that even Aetna's post-hoc rationalization was arbitrary and capricious.

As part of the review process, Aetna sent letters to Dr. Schroer and Dr. Simek asking them if they agreed with Aetna's functional assessment of Plaintiff's capabilities based on surveillance and Aetna's reading of Plaintiff's medical records. (AR 48). Aetna's description of what Ms. Miller was doing in the surveillance footage was misleading because it suggested that Ms. Miller had a higher functionality than she was actually depicted as having in the report and the video. For example, in the letter to Dr. Simek, which is identical to the letter sent to Dr. Schroer, Aetna's disability nurse reviewer wrote:

> We would like to make you aware of Ms. Miller's observed functional capacity. In order to gain a clear understanding of Ms. Miller's functional status, we observed her activities over a 2 day timeframe. Through direct observation of Ms. Miller, we find that she demonstrates the ability to drive independently, use her hands, arms, and feet to drive, walk independently with no assistive devices, she demonstrates sitting for prolonged periods of time, alternates standing and walking, bending, reaching, using her hands to grasp, hold

---

[2] *See Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 667 (S.D. Ohio 2015) (noting that insurer's reasoning for discounting a treating therapist's opinion was not raised in benefit termination letter or appeal decision and was thus a "post hoc justification" that it was not permitted to consider) (citing *Crist v. Liberty Life Assurance Co. of Boston*, No. 3:04–CV–010, 2006 WL 1209350, at *9 (S.D.Ohio May 4, 2006)).

16

> and manipulate objects, perform fine motor functions and repetitive motion of the hands and fingers. She demonstrates capacity for calculation and concentration when exchanging money and conversing with customers at craft fairs and while she is crafting.

(AR 48). The surveillance report, however, indicated that Ms. Miller was likely driven to the craft fair in a vehicle other than her own "as a passenger" and that "other individuals dismantled her table area" at the craft fair. (AR 43-44). Furthermore, while the surveillance footage and report did indicate that Ms. Miller sat and stood variably throughout her time at the craft fair, neither indicate that she was bending, demonstrated a capacity for "concentration," or indicate that she has the ability to drive independently. (ECF No. 17-8). Additionally, for a significant portion of the eight-minute surveillance video, Ms. Miller is depicted with one or both of her hands clutching her lower back, possibly indicating discomfort or pain. *Id.*

Furthermore, after Dr. Carrillo called Dr. Simek to discuss Ms. Miller, Dr. Simek questioned Dr. Carrillo's belief that there is a discrepancy between Plaintiff's reports of pain and the surveillance footage, reiterated that he believed Ms. Miller was disabled due to her diagnosed conditions, and recommended that Dr. Carrillo conduct an in person medical examination if she disagreed. (AR 295). While Dr. Chauhan, Plaintiff's rheumatologist, opined that she did not believe that Plaintiff was disabled or unable to work, Dr. Chauhan admitted she had not seen Plaintiff since October 2017 and there is no indication that Dr. Chauhan understood the material duties of Plaintiff's work. *Id.* Dr. Simek, on the other hand, specifically referred to Ms. Miller's occupation, indicating that although Ms. Miller attended a craft fair, that did not indicate she was capable of working since Plaintiff is a "computer programmer and that is a hard job compared with a craft fair." *Id.* Dr. Carrillo and Aetna's failure to credit Dr. Simek's opinions thus weighs in favor of a finding that the denial of benefits was arbitrary and capricious. *See DeGennaro v. Liberty Life Assur. Co. of Bos.*, 561 F. Supp. 2d 811, 819 (W.D. Mich. 2008) (finding inappropriate plan provider's fixation on comments by treating provider that support the plan provider's finding of

non-disability and failure to credit the majority of treating provider's opinions "concerning the cumulative effect of [claimant's] conditions and the impact of her medication").

The Sixth Circuit has underscored the principle that a plan administrator may not arbitrarily disregard reliable medical evidence, including the opinions of a treating physician. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (noting that reliance on independent expert's "conclusory assertions" was inappropriate where the expert "failed to rebut the contrary medical conclusions of the physician who conducted regular physical examinations of the participant" and where "the expert's report neglected to mention the observations of the plan administrator's own field investigator that undermined the expert's diagnosis"). This is just what Aetna has done by cherry-picking the parts of the administrative record that supports its conclusion, instead of basing its decision on a fair review of the "quantity and quality of medical evidence" in the record. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir. 2005) (determining that insurer's decision to terminate benefits was arbitrary and capricious because it relied on medical reviewer whose decision was based on a "selective review of the administrative record").

### C. Reliance on Surveillance Footage

Aetna argues that the surveillance footage of Ms. Miller at the craft fair is significant evidence that she is not disabled. (ECF No. 19 at 15-16). Ms. Miller argues that Aetna relied on a surveillance video which supports Ms. Miller's claim of disability and that also is ultimately irrelevant to the material duties of her occupation as software engineer. (ECF No. 22 at 14). As indicated above, the surveillance footage is not as telling as Aetna believes it to be, and at times appears to support Ms. Miller's claims of back pain since she is depicted clutching her lower back for a significant portion of the video. Furthermore, the surveillance report indicates that Ms. Miller

did not leave the house the day after the craft fair, supporting Ms. Miller's contention that after attending a craft fair, she would "schedule one to two days vacation … in order to recover as much as possible." (AR 874).

Even though the surveillance footage does depict Ms. Miller sitting for extended periods of time, which she claims she is unable to do in her position of software engineer—the video does not undermine her claim of disability. First, reliance on this footage is inappropriate since any discrepancies between Ms. Miller's stated and observed functionality are minor. Of the two days that the investigator spent surveilling Ms. Miller, he captured only eight minutes of footage showing Ms. Miller engaged in any activity, and the activity depicted did "not indicate that [claimant] can perform all the physical duties of her former occupation." *Hunter v. Life Ins. Co. of N. Am.*, 437 F. App'x 372, 378–79 (6th Cir. 2011) (noting that in over "eighty hours of surveillance, less than thirty minutes capture [claimant engaging in any activity whatsoever" and that footage revealed only minor discrepancy where claimant was observed pumping gasoline and driving despite claiming she was disabled from sedentary position due to chronic back pain).

Furthermore, the video does not depict Ms. Miller engaging in activity related to the material duties of her job as a software engineer because it merely shows her engaging in an infrequent hobby. As the Sixth Circuit observed in *Kramer*, the frequency of the activity that a claimant is depicted as doing in surveillance footage is a relevant consideration. 571 F.3d at 507–08. Where footage depicts an individual engaging in an activity that seems at odds with his or her claimed limitations, it is a relevant consideration "that an individual who suffers from physical limitations could fight through the pain for one or two hours in order to accomplish an [infrequent] task." *Id.* (determining plan provider was not entitled to cite surveillance footage of claimant working on a sail boat to conclude that claimant was capable of heavy work where plaintiff

explained that she was getting boat ready for sale and that activity is an "infrequent event"). Here too, Ms. Miller's explanation that she attended fewer craft fairs as her disability progressed and that she has to ensure she has scheduled time to recover is persuasive since Ms. Miller would not be permitted to attend work infrequently and would experience significantly more pressure to perform at a high level every day while at work than while at a craft fair. (AR 874-75).

### D.  Failure to Consider Cumulative Effect of all Illnesses on Disability Status

Plaintiff also argues that Aetna failed to consider the "combined effects of Ms. Miller's comorbid conditions. (ECF No. 22 at 19). As Plaintiff argues, Aetna was required to consider the "potentially disabling impact of the combined effects of [claimant's] multiple medical conditions, as opposed to the particular impact of each separate condition in isolation, and of the effects of her medications." *DeGennaro v. Liberty Life Assur. Co. of Bos.*, 561 F. Supp. 2d 811, 817 (W.D. Mich. 2008) (determining that final decision denying benefits was arbitrary and capricious where it did not consider cumulative effect of all conditions on plaintiff); *see also Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 264 (6th Cir. 2006) (plan administrator was required to consider "effects of [claimant's] many medications" in claimant's disability determination and failure to do so is arbitrary and capricious). This is important since, just as in *DeGennaro*, "each of [Miller's] conditions, as a discrete issue, might not create a disability, but her physician had made it clear … that the totality of her conditions as well as her medications created the disability." *Id*. at 818. As indicated above, Aetna's decision to ignore Dr. Simek's opinion that Ms. Miller was disabled as a result of the interplay between her many diagnosed conditions and the medication she was prescribed to manage those conditions, was arbitrary and capricious. (AR 111).

**E.  Other Factors**

This Court is also required to consider other factors that would impact its determination as to whether Aenta's ultimate decision to deny benefits was arbitrary and capricious. One of those factors is the inherent conflict present since Aetna both pays the disability claims and decides which claimants are entitled to receive payment. *See Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). As indicated above, Aetna's decision in administering Ms. Miller's disability claim suggests that this conflict of interest had a part in its decision, since it appears that Aetna started with the decision to deny benefits and then "worked backwards to fill in the blanks as to when and why." *Haning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 675 (S.D. Ohio 2015) (noting that conflict of interest was "significant" where insurer decided to terminate claimant's benefits since insurer's decision was based on selective reading of medical record and showed a "predisposition toward terminating [claimant's] benefits").

Based on the record, Aetna started with the assumption that Ms. Miller had been living with her diagnosed conditions for several years and, as a result, there was no change in her condition or treatment that would justify her asserted disability. (AR 76) (noting "there was no significant change in your treatment at the time you stopped working…"). This assumption, however, is flawed. Courts have repeatedly observed that the "the lack of any 'significant change' [in treatment or physical condition] leading up to the" date that a claimant stops working is not dispositive where a claimant's disability "progressed slowly over a period of years." *Delisle v. Sun Life Assur. Co. of Canada*, 636 F. Supp. 2d 561, 573 (E.D. Mich. 2007) (determining that defendant's decision to deny disability benefits for claimant with a range of maladies on the basis of flawed assumptions thereby disregarding progressive onset of her conditions was arbitrary and capricious), *aff'd*, 558 F.3d 440 (6th Cir. 2009); *see also Hawkins v. First Union Corp. Long-Term*

21

*Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) (noting that claimant suffering from disability due to fibromyalgia with no physical manifestations of progression of pain should "not be punished for heroic efforts to work" since "[a] desperate person might force himself to work despite an illness that everyone agreed was totally disabling").

The Sixth Circuit has repeatedly reiterated that there is "no logical incompatibility between working full time and being disabled from working full time." *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 448 (6th Cir. 2009) (internal citations omitted); *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 865 (6th Cir. 2007). In *DeLisle*, just as here, the Sixth Circuit admonished a plan administrator for ignoring the medical evidence and opinions of a claimant's treating physician relating to the progressive nature of the onset of claimant's disability, noting that the failure to take this information into account suggested the plan administrator's decision was arbitrary and capricious. *Id*. at 447. Here too, the "cumulative effect" of the factors considered in this opinion lead this Court to conclude that Aetna's decision was not supported by a reasonable explanation and was arbitrary and capricious in light of overwhelming evidence demonstrating Plaintiff's disability from her occupation as a lead software engineer. *Haning*, 140 F. Supp. 3d at 675.

### F. Remedy

Once a court has determined that a denial of benefits was arbitrary and capricious, the court must determine the proper remedy. Generally, "courts may either award benefits to the claimant or remand to the plan administrator." *Elliott*, 473 F.3d at 621. A remand to the plan administrator is appropriate "where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled." *Id.* at 622; *see also Kalish*, 419 F.3d at 513 (concluding that where claimants have clearly established their disability,

22

the appropriate remedy is an immediate award of benefits rather than a remand to consider previously ignored evidence). As the Sixth Circuit has warned, "[p]lan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 172 (6th Cir. 2007). Instead, "[t]hey need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable." *Id.*

Here, Ms. Miller's treating providers and the medical evidence indicate that she was disabled from her occupation as a software engineer due to her chronic back pain and fibromyalgia, among other conditions, and that she was prescribed and had taken medication that impacted her cognition and ability to focus. Accordingly, Ms. Miller is clearly entitled to disability benefits and a retroactive award is warranted. *See Haning*, 140 F. Supp. 3d at 676 (S.D. Ohio 2015) (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir.2000)). Aetna also forfeited its right to reconsideration by failing to request that the Court remand Ms. Miller's claim for reconsideration in the event that the Court found the benefits termination arbitrary and capricious. *Haning*, 140 F. Supp. 3d at 676 (citing *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 372 n. 7 (6th Cir. 2009)).

The Court recognizes, however, that the terms of the Plan permit Aetna to require *continued* proof of Ms. Miller's disability for her benefits to continue and that, after a period of 24 months from the date of disability onset, her continued disability must relate only to "any occupation" and not the material duties of her occupation as a lead software engineer. (ECF No. 17-8). This opinion does not limit the applicability of those provisions. *See Cooper*, 486 F.3d at 173.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Administrative Record

(ECF No. 19) is **DENIED** and Plaintiff's Motion (ECF No. 20) is **GRANTED**.  This case is hereby

**DISMISSED**.

IT IS SO ORDERED.

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

DATE: May 4, 2020